# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 5722 | **DATE** | 7/2/2012 |
| **CASE TITLE** | Robert Lee Edwards vs. Michael Pentangelo, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, Plaintiff's motion to alter or amend judgment [38] is denied.

■[ For further details see text below.]

Docketing to mail notices. Notices mailed by Judicial staff.

---

## STATEMENT

Plaintiff Robert Edwards, a former federal prisoner, brought a one-count *Bivens* action against Defendants Michael Pentangelo and Jeanne Walsh, two U.S. Probation officers. Edwards alleged that Pentangelo and Walsh violated Edwards's due process rights by improperly restricting his movements while he was staying at a Salvation Army residential re-entry facility as part of his supervised release.

In view of the novelty of Plaintiff's claim, the Court appointed counsel to represent Plaintiff in this matter [see 23]. After briefing on Defendants' motion to dismiss, the Court concluded that Plaintiff failed to state a claim upon which relief may be granted and dismissed his case. Plaintiff now has brought a motion to alter or amend the Court's judgment order, provide relief from judgment, and/or for leave to file an amended complaint [38]. Many of Plaintiff's arguments simply rehash prior arguments made in opposition to Defendants' motion to dismiss. As to those arguments, the Court remains unpersuaded. To the extent that Plaintiff alleges additional facts in support of his claim, they fail to make a difference to the outcome. Finally, even giving Plaintiff the benefit of every doubt and every possible inference, a third amended complaint would be futile because, at a minimum, Defendants are entitled to qualified immunity.

### I. Legal Standard on Motion to Alter or Amend

A court may alter or amend a judgment when the movant "clearly establish[es]" that "there is newly discovered evidence or there has been a manifest error of law or fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). In regard to the "manifest error" prong, the Seventh Circuit has elaborated that a motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

While the Federal Rules of Civil Procedure allow a movant to bring to a court's attention a manifest error of law, it "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). And because the standards for reconsideration are exacting, our court of appeals has stressed that issues appropriate for reconsideration "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191.

Before entry of judgment, there is a presumption in favor of freely amending pleadings under Rule 15(a). This presumption, however, "is reversed after judgment has been entered." *First Nat'l Bank of Louisville v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 933 F.2d 466, 468 (7th Cir. 1991). Said differently, although before judgment is entered leave to amend pleadings is to be freely given as justice requires, "justice may require something less in post-judgment situations than in pre-judgment situations." *Doe v. Howe Military Sch.*, 227 F.3d 981, 989 (7th Cir. 2000). In addition, a post-judgment request for leave to amend a complaint can be denied for any of the ordinary reasons leave to amend may be denied, including undue delay, bad faith, prejudice to the opponent, dilatory motive on the part of the moving party, or when amendment would be futile. *Crestview Vill. Apartments v. HUD*, 383 F.3d 552, 558 (7th Cir. 2004); *Rodriguez v. United States*, 286 F.3d 972, 980 (7th Cir. 2002).

## II. Analysis

The Court briefly restates the factual background alleged by Plaintiff Edwards. Edwards originally was sentenced by Judge Elaine Bucklo on November 26, 1996, after pleading guilty to violating 18 U.S.C. § 930 (Count I) and 18 U.S.C. § 111 (Count II). At that time, Edwards received a five-year prison term on Count I and a ten-year prison term on Count II, to run consecutively. Edwards also was sentenced to three years of supervised release on Count I and three years of supervised release on Count II, to run consecutively and to be completed upon his release from imprisonment.

Because of good behavior, Edwards was scheduled to complete his prison term on May 23, 2008. On May 15, 2008, a recommended modification to Edwards' supervised release and an accompanying waiver by Edwards were filed in his criminal case. The recommended modification, which was entered by the court that same day, required Edwards to participate in mental health treatment and a drug aftercare program as part of his supervised release. The modification also specified that as a condition of his supervised release, Edwards "shall reside" at a Salvation Army residential re-entry center for a period of time not to exceed 120 days. The waiver that was filed with the recommended modification described the proposed conditions of the modification and advised Edwards that he was entitled to a hearing and assistance of counsel before any unfavorable changes could be made to his supervised release. Rather than seeking a hearing or the assistance of counsel, Edwards signed the waiver, agreeing to the modified conditions that were entered by the court.

Edwards alleges that he arrived at the Salvation Army facility on May 23, 2008, and that during his stay there, he and the other residents of the facility were restricted in their ability to come and go freely. According to Edwards, most of the other residents were, unlike him, still serving out their prison sentences on a pre-release basis. Edwards alleges that Pentangelo did not tell him that his ability to come and go from the facility would be restricted. Edwards contends that he should have been exempt from restrictions on his movements and requested as much from both Paul Hall, his Salvation Army supervisor, and Defendant Pentangelo, his U.S. Probation officer. When Hall responded to this request, he provided Edwards with a handwritten note stating that he did not have the legal authority to grant Edwards the freedom to come and go as he wished, that the U.S. Probation Office had authority over Edwards' movements, and that Edwards must seek a remedy from his U.S.

Probation officer. When Pentangelo responded to Edwards' request, he provided Edwards with a typed letter stating as follows:

> In reference to your request that you be permitted unfettered authorization to leave the Salvation Army on your own volition and without conformance to the program rules/procedures adopted by the Salvation Army, please be advised that I have consulted with my supervisor and we have agreed that you will not be granted such permission. As we previously discussed, the undersigned officer is willing to permit blocks of time for authorized leave on any given day to facilitate your endeavor to secure a suitable residence and to go about your general business.

In his civil suit, Edwards maintained that the modification order failed to contain a provision stating that his movements were to be restricted in any manner and that it did not include any language stating that the Probation Department had authority to impose restrictions on Edwards' ability to come and go from the Salvation Army facility. As a result, Edwards alleged that his due process rights were violated.

On January 18, 2012, the Court entered its opinion dismissing this action on two grounds. First, the Court determined that this lawsuit was barred by Judge Bucklo's modification order because the order mandated that Edwards reside at the Salvation Army residential re-entry center for a period of time not to exceed 120 days and plausibly required Edwards to comply with the standard rules of the facility during his stay there. Second, the Court concluded that this action was precluded by the *Heck* doctrine because Edwards' claim that he should have been exempt from any restrictions on his movement, and that it was a violation of due process for him to be subject to any such restrictions after the completion of his prison term, necessarily implied the invalidity of the modification order.

In his present motion, Edwards asks the court to "reconsider" the judgment against him based on Rules 59(e), 60(b), and 15(a). Plaintiff's primary contention is that "shall reside" has more than one plausible interpretation and that the agreed order signed by Judge Bucklo did not actually mean that Plaintiff was to be "confined" to the facility, but rather that he was offered the opportunity to "reside" there (because he would have been homeless when he left the facility) and that he would be free to come and go as he wished. In other words, Plaintiff contends that Judge Bucklo's modification order did not contain the language implied by Defendants or the Court. The Court specifically rejected this argument in its original order, explaining as follows:

> While it is true that [Judge Bucklo's] modification order did not expressly address the issue of Edwards' movement, this does not mean that the order can be plausibly construed to exempt Edwards from the standard restrictions on movement that applied to other residents at the facility. If Plaintiff's position were correct, then the Salvation Army facility would be barred from applying any rule or policy to Edwards in the absence of a court order expressly addressing the specific subject matter at hand and specifying what actions could or could not be taken. Rather, the plausible construction of the order is that it required Edwards to reside at the Salvation Army facility and to comply with the standard rules of the facility absent an approved exception to those rules.

The Court remains of this view, even accepting the additional allegations asserted by Plaintiff in his proposed third amended complaint. As demonstrated in the Court's prior opinion, accepting Edwards' construction of the modification order would lead to absurd results. Whether or not "reside" means what Edwards says it means, Edwards signed an agreement that he would "reside" at the facility and the rules of the facility confined his movements. Accepting Edwards construction would prevent the Salvation Army from applying rules or policies to Edwards in the absence of a court order expressly detailing which rules he would be subject to. This position

simply is not tenable. Among other reasons, a term of supervised release that is imposed at the time of sentencing is part and parcel of the sentence itself (see 18 U.S.C. § 3583(a)); while on supervised release, Edwards was still serving a portion of his sentence. Whether he was "residing" at the Salvation Army or anywhere else, Edwards was subject to restrictions on his liberty pursuant to whatever general or special conditions of supervised release Judge Bucklo imposed. For example, random drug testing is a frequently imposed condition that restricts the liberty of persons on supervised release in ways that ordinarily do not apply to persons who are not under a criminal justice sentence.

Edwards also argued (and continues to argue) that this action was not barred by the modification order because Defendant Pentangelo allegedly failed to provide Edwards with an adequate explanation of the proposed order before it was entered. However, the Court rejected this argument as well, noting that Edwards had signed a waiver advising him that he was entitled to a hearing and assistance of counsel before any unfavorable changes could be made to his supervised release. By signing this waiver, Edwards had waived his right to a hearing and assistance of counsel and also agreed to the modified conditions that were entered by the court. The opportune time for Edwards to have sought clarification on the modification order was prior to signing the waiver. And failing that, if Edwards disagreed with his probation officer as to the meaning of a judge's order, he could have filed a motion before Judge Bucklo seeking clarification. He did not, and instead waited over two years (from the time he entered the Salvation Army facility in May 2008) to file a federal *Bivens* action. **[FN1]**

> **[FN1]** Because the parties have not briefed the issue, the Court declines to address potential statute of limitations issues at this time. However, the record is clear that Edwards was aware of the restrictions on his movement as soon as he entered the Salvation Army facility in May 2008.

Edwards also asks the Court to vacate its prior judgment because he seeks leave to file a third amended complaint. As set forth above, Edwards has contended throughout this lawsuit that Judge Bucklo's modification order was unclear or ambiguous, and that Defendants failed to provide Edwards with an adequate explanation of the proposed order before it was entered. Now, Edwards is seeking leave to file a third amended complaint that attempts to reiterate this same claim (in one form or another) based on additional facts which set forth the drafting history of the modification order, a revoked offer for Edwards to participate in an early release program, and a discussion with Salvation Army staff about alternative housing. According to Edwards, these additional allegations show that the parties did not intend to restrict his movements during his supervised release period and/or that Defendants breached an obligation to Edwards to explain the house rules that would apply during his supervised release period. None of these additional allegations changes the fact that Edwards agreed to the modification, agreed to "reside" at the facility, and in so doing at least implicitly agreed to abide by the facility's rules. As the Court has repeatedly stated, to accept Plaintiff's construction of the modification order would lead to absurd results and these "new" facts do not change that conclusion. Based on his waiver and the modification order entered by Judge Bucklo, the Court concludes that Plaintiff simply does not have a claim that this Court (or any court for that matter) has recognized or should now recognize.

But even if the Court's conclusion as to the plausibility of a cause of action were incorrect, Edwards' proposed third amended complaint would be futile for at least one additional reason: Under the most generous construction of the circumstances alleged in the proposed third amended complaint, Defendants would be entitled to immunity. Although the Court did not address the issue of immunity in ruling on the motion to dismiss (because the Court concluded that Edwards failed to state a *Bivens* claim), the parties have briefed the issue and the facts alleged in this case clearly provide Defendants with immunity.

For purposes of immunity analysis, *Bivens* actions are not distinguished from civil rights suits brought against state officers under 42 U.S.C. § 1983. *Walrath v. United States,* 35 F.3d 277, 281 n. 1 (7th Cir. 1994). The

# STATEMENT

Supreme Court recognizes two types of immunities under § 1983: qualified immunity and absolute immunity. *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993). The test to determine whether an official is entitled to absolute immunity is well-established: a court must apply a "functional approach" by "look[ing] to the nature of the function performed, not the identity of the actor who performed it." *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) (quoting *Wilson*, 86 F.3d at 1443). Absolute immunity is not limited to prosecutors or judges, but rather "protects members of quasi-adjudicatory bodies when their duties are functionally equivalent" (*id.*) and "and require a full exemption from liability" (*Butz v. Economou*, 438 U.S. 478, 508 (1978)). Under this functional test, the Seventh Circuit has recognized that certain actions of probation officers deserve absolute immunity, including conduct that is analogous to acts undertaken by judges (*Walrath v. United States*, 35 F.3d 277, 282 (7th Cir. 1994)), integrally related to the judicial process (*Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986)), or prosecutorial in nature (*Walrath*, 35 F.3d at 283).

In this case, Defendants clearly were acting in their role as probation officers. Furthermore, Defendants' conduct–interpreting Judge Bucklo's supervised release modification order and declining to grant Edwards's request for complete freedom of movement–was integrally related to the judicial process. So there is a good argument that Defendants' conduct was "quasi-judicial" and thus within the scope of a probation officer's absolute immunity from suit. But the Court need not definitively opine on that issue, for even if Defendants were not entitled to absolute immunity for their actions, they are entitled to qualified immunity.

Qualified immunity protects federal officers who act reasonably and do not violate a clearly established right, even if their actions are found to be mistaken with the benefit of hindsight. *Purtell v. Mason*, 527 F.3d 615, 626 (7th Cir. 2008). It covers "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Vinning-El v. Evans*, 657 F.3d 591, 594 (7th Cir. 2011). In the present case, Edwards alleges that Pentangelo and his supervisor, Walsh, should have, but failed to, approve an exception for Edwards that would have permitted him to come and go freely from the Salvation Army facility because his prison term was complete. In addition, Edwards alleges that Pentangelo's two letters to Hall and Edwards himself took inconsistent positions regarding the authority of the U.S. Probation Office to control Edwards's movements.

None of these allegations, if proven to be true, could amount to a violation of a clearly established constitutional right by Pentangelo or Walsh. Indeed, even if the Court were to assume that Edwards' request for complete freedom of movement should have been granted (which the Court has already declined to do), the most that this would show would be an alleged mistake by Pentangelo and Walsh. In responding to the motion to dismiss, Edwards argued that Defendants exceeded their authority as U.S. Probation officers and possibly violated policies and practices that may be revealed through discovery. However, an action by a law enforcement officer that exceeds his authority is not the same thing as a constitutional violation, much less a violation of a clearly established constitutional right. *Davis v. Scherer*, 468 U.S. 183, 194-96 (1984). As explained by the Supreme Court in *Davis*, officials sued for constitutional violations "do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Id.* at 194. Rather, officials lose their qualified immunity status only if the plaintiff can show the violation of a clearly established constitutional right. *Id.*. Edwards has failed to identify a single case or other authority showing that the specific conduct at issue–denying Edwards' request for complete freedom of movement and requiring him to comply with the standard rules of the Salvation Army facility–was clearly forbidden at the time, nor has the Court found a single case. See also *Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 (7th Cir. 1995) (officer's failure to follow procedures that are required by state law, but not by the federal Constitution, establishes only a violation of state law); *Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 929 (9th Cir. 2001) (whether an agent's conduct violates internal departmental policy is "simply irrelevant to the question of [his] eligibility for qualified immunity in a suit over the deprivation of a constitutional right") (internal quotation marks omitted); *Herring v. Keenan*, 218 F.3d 1171,

## STATEMENT

1180 (10th Cir. 2000) (violation of internal procedures by a probation officer does not constitute violation of a clearly established constitutional right).  Accordingly, even if the Court determined that Plaintiff's third amended complaint stated a cause of action, the amendment would be futile because Pentangelo and Walsh are entitled to qualified immunity.

For all of these reasons, the Court denies Plaintiff's motion to alter or amend the Court's judgment order, provide relief from judgment, and/or for leave to file an amended complaint [38].  Once again, the Court expresses its appreciation to appointed counsel for his efforts on behalf of Mr. Edwards in this matter.